FILED
2009 Aug-25 PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KRISTOPHER M. HEMBREE, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | 5:08-CV-00623-LSC |
| ] | |
| MICHAEL J. ASTRUE, ] | |
| Commissioner, ] | |
| Social Security Administration, ] | |
| ] | |
| Defendant. ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, Kristopher M. Hembree, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Hembree timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Hembree was twenty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school

education.  (Tr. at 26.)  His past work experiences include employment as an assembler, a short order cook, an auto mechanic, an airline laborer, and a construction worker.  (*Id*.)  Mr. Hembree originally claimed that he became disabled on June 1, 2002.  (*Id*. at 19.)  He later amended his onset date to January 11, 2005.  (*Id*. at 20.)  Mr. Hembree claims that he is disabled due to degenerative disc disease of the lumbar spine with history of laminectomy and fusion in February 2003, current post laminectomy/fusion syndrome, and obesity.  (*Id* at 22.)

At the hearing, the ALJ found that because Mr. Hembree was insured for purposes of Social Security disability insurance only through June 30, 2002, he was ineligible for consideration for DIB.  (*Id*. at 21.)  In order to be eligible for DIB, a claimant must have disability insured status coverage in the quarter in which he became disabled.  *See* 20 C.F.R. § 404.131.  Since Mr. Hembree has amended his alleged onset of disability date to a period of time after his disability insured status expired, he is not eligible for consideration for a period of disability or DIB. (Tr. at 19.)  Meeting this requirement is not necessary for SSI, and the ALJ proceeded to determine the merits of Plaintiff's claim for SSI.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Hembree does not meet the nondisability requirements for a period of disability and DIB and was not insured through the date of his decision. (Tr.

at 19-20.)  He further determined that Mr. Hembree has not engaged in substantial gainful activity since the alleged onset of his disability.  (*Id*. at 21.)  According to the ALJ, Plaintiff's degenerative disc disease of the lumbar spine with history of laminectomy and fusion in February 2003, current post laminectomy/fusion syndrome, and obesity are considered "severe" based on the requirements set forth in the regulations.  (*Id*. at 22.)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id*. at 22.)  The ALJ did not find Mr. Hembree's allegations to be totally credible, and he determined that he has the following residual functional capacity:

> stand for 30 minutes at one time for two out of eight hours, walk for 30 minutes at one time for two out of eight hours, and sit one hour at a time for four hours out of eight hours. He can frequently lift 10 pounds, and occasionally lift 20 pounds, can push/pull frequently with both arms and occasionally with both legs, occasionally climb/balance/stoop/kneel/ crouch/crawl, constantly handle/finger/feel/talk/ hear/reach overhead, and frequently work in extreme cold and heat, vibration, exposure to fumes/noxious odors/dust/mists/gases/poor ventilation, in proximity to moving mechanical parts, working in high/exposed places, and driving automotive equipment. He would miss no more than one day of work per month. Any need to lie down could be accomplished [during] lunch or customary breaks in the

workday.

(*Id*. at 22.)

According to the ALJ, Mr. Hembree is unable to perform any of his past relevant work, he is a "younger individual," and he has "at least a high school education and is able to communicate in English," as those terms are defined by the regulations. (*Id*. at 26.) He determined that "[t]ransferability of job skills is not material" in this matter. (*Id*. at 26-27.) The ALJ found that Mr. Hembree has the residual functional capacity to perform "unskilled, light occupations." (*Id*. at 27.) Even though Plaintiff cannot perform the full range of unskilled light work, the ALJ relied on the testimony of the vocational expert to find that there are a significant number of jobs in the national economy that he is capable of performing, such as information clerk, parking lot attendant, and ticket seller. (*Id*.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 1, 2005 through the date of this decision." (*Id*.)

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's

decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Mr. Hembree alleges that the ALJ's decision should be reversed and remanded for three reasons. First, he believes that the ALJ failed to properly consider his long-term treating pain management specialist's opinion when he found that Mr. Hembree has the residual functional capacity for a limited range of light work. (Doc. 7 at 7.) Second, Plaintiff contends that the ALJ did not properly consider his claim under the Eleventh Circuit pain standard. (*Id.* at 9.) Finally, Mr. Hembree argues that the ALJ's opinion evidences prejudice that prevented an unbiased consideration of his application for benefits. (*Id.* at 10.)

A. Treating Physician's Diagnoses.

Plaintiff contends that the ALJ improperly evaluated his treating physician's opinion. (Doc. 9.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125

F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . "but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or his] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Roberts, Plaintiff's treating physician, has treated the Plaintiff for pain since October 2003. (Tr. at 24.) The ALJ noted that Dr.

Roberts saw the plaintiff twice in 2003, four times in 2004, three times in 2005, three times in 2006, and once in 2007. (*Id.* at 24.) In a September 7, 2005 opinion, he concluded that "Mr. Hembree does suffer from a significant degree of pain that would likely be distracting and significantly impair his performance of daily activities or work." (*Id.* at 203.) He further stated that his "consistent opioid medication may indeed affect his ability to reliably perform in the work environment" and that Mr. Humbree required these medications "just to allow his activities of daily living." (*Id.*) Dr. Roberts concluded that Mr. Hembree could not carry more than ten pounds and should be restricted from pushing, pulling, and climbing ladders or stairs. (*Id.* at 270.)

In determining that Mr. Hembree was not disabled, the ALJ gave little weight to the opinions of Dr. Roberts, relying instead on the conclusions of the consulting physician, Dr. Jampala. (*Id.* at 24.) The ALJ determined that the findings of Dr. Jampala were better supported not only by the record, but also by conclusions in Dr. Robert's examinations. (*Id.* at 26.) The Plaintiff maintains that the ALJ's consideration of Dr. Roberts's opinion was improper in that he failed to give sufficient weight to his conclusions.

Plaintiff argues that the ALJ rejected Dr. Roberts's opinion "based solely on the frequency of [Mr. Hembree's] visits," a reason he characterizes as "absurd and ridiculously random." (Doc. 7 at 7.) The record, however, indicates that the claim that the ALJ based his decision solely on the frequency of Mr. Hembree's visits is baseless.

The ALJ, in accepting the opinion of Dr. Jampala, specifically indicated how that opinion was more consistent with the findings of Dr. Roberts than the treating physician's own conclusions. (Tr. at 24-26.) For instance, Dr. Roberts's concluded in 2005 that Mr. Hembree's pain would impair both his daily activities and his ability to perform at work. (*Id.* at 203.) The ALJ noted, however, that Dr. Roberts's examinations generally reflected normal findings in regard to range of motion, ambulation, and flexibility. (*Id.* at 24-25, 191-97, 216-21.) These findings were consistent with those of Dr. Jampala. (*Id.* at 207-08.) Dr. Jampala determined that based on these findings, which as noted were generally in line with Dr. Roberts's reports, Mr. Hembree's complaints of pain were "out of proportion to his clinical findings." (*Id.* at 208.) Furthermore, during many of the periods in which he reported pain at a 10 on a 10 scale, Mr. Hembree was

working in construction, employment that the ALJ noted required medium or heavy exertion, not the light occupations the ALJ found he could now perform.  (*Id.* at 24-26.)  Finally, while Dr. Roberts's opined that Mr. Hembree's medication may affect his ability to perform in a work environment, his treatment records indicate that he consistently reported a lack of side effects from his medication.  (*Id.* at 25, 192, 220-21.)

The ALJ correctly gave less credence to Dr. Roberts's opinions regarding the extent of Mr. Hembree's disability since they are inconsistent with Dr. Roberts's own findings.  *See Edwards*, 937 F.2d at 583-84.  As such, the ALJ did not err in giving greater weight to the consulting physician's findings.  For these reasons, the Court is of the opinion that the ALJ had good cause to disregard Dr. Roberts's October 2003 assessment of Plaintiff's condition.  *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

    B.    Mr. Hembree's Allegations of Pain.

Plaintiff asserts that the ALJ's evaluation of his subjective complaints of pain was improper.  Specifically, Mr. Hembree alleges that "the ALJ failed to even consider the claim under the Eleventh Circuit pain standard." (Doc. 7.)  Subjective testimony of pain and other symptoms may establish

the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication

must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered his medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Mr. Hembree met the first prong of the Eleventh Circuit's pain standard. As discussed above, however, the ALJ rejected Mr. Hembree's subjective claims of pain because they were inconsistent with Dr. Roberts's objective tests showing good results in range of motion, ambulation, and bending testing. (*Id.* at 25.) Plaintiff's complaints of pain have varied greatly over the years. He initially reported 5/10 pain in December 2002, prior to surgery, and stated his pain was intermittent but daily and ranged between 0 and 10/10 in October 2003. (*Id.* at 24.) Plaintiff reported 7/10 and 10/10 pain in November 2003, but then reported no pain following facet and sacroiliac joint injections. (*Id.* at 25.) In November 2004, he reported 4-5/10 pain and then reported 10/10 pain in February 2005, despite stating he was then working in construction.

*Id.* Plaintiff reported 8 ½ to 9/10 pain in March 2007.  The ALJ also noted that Dr. Jampala found Mr. Hembree's allegations of pain to be "out of proportion to his clinical findings." (*Id.* at 208.)  Tests conducted by Dr. Jampala showed no evidence of knee deformity, normal spine movement and motor function in all muscle groups, and that hardware from his back surgery was in place and functioning properly.  (*Id.* at 208.)  To the extent the ALJ did find Mr. Hembree's subjective pain claims to be credible, he included that factor in his calculation of work Mr. Hembree was capable of performing — unskilled light occupations.  (*Id.* at 27.)

For the above stated reasons, this Court is of the opinion that the ALJ did correctly apply the Eleventh Circuit pain standard in this case.  The ALJ was justified in not fully crediting Plaintiff's subjective complaints of pain in light of the evidence in the record.

C.   Mr. Hembree's Allegations of Prejudice.

Finally, Plaintiff asserts that the ALJ's comments regarding Mr. Hembree demonstrate prejudice that prevented the ALJ from giving an unbiased consideration to Plaintiff's application.  The ALJ stated, "His complaints of pain are considered exaggerated.  He would benefit by having

somewhere to go in the day, rather than staying home and being supported by his mother, as it appears his adult brother also does."

ALJs are presumed to be unbiased and exercise their decision-making authority with honesty and integrity. *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). These presumptions can only be overcome by demonstration of either a conflict of interest of the ALJ or another specific reason for disqualification. *McClure* 456 U.S. at 195. Plaintiff must show the ALJ either derived his opinion from an extrajudicial source or engaged in conduct that "reveal[s] such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

Plaintiff's claims of bias fail. The ALJ's question about the brother's age and occupation is part of the information seeking process. The ALJ's statement that Plaintiff could benefit from having somewhere to go, even if unnecessary, does not rise to the standard necessary to show bias or overcome the presumptions in favor of fairness. Plaintiff, therefore, has failed to sufficiently demonstrate bias or prejudice in the ALJ.

IV.     Conclusion.

Upon review of the administrative record, and considering all of Mr. Hembree's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 25th day of August 2009.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671